**In re HINTON.**

[Cite as *In re Hinton* (1992), 84 Ohio App.3d 156.]

Court of Appeals of Ohio,
Gallia County.

No. 92 CA 18.

Decided Dec. 4, 1992.

*C. Jeffrey Adkins,* Gallia County Assistant Prosecuting Attorney, for appellee.

*William D. Conley,* for appellant.

GREY, Judge.

This is an appeal from a judgment of the Juvenile Division of the Gallia County Common Pleas Court finding Deanna Hinton a delinquent child by reason of having committed an act which, if committed by an adult, would constitute a fourth degree felony, *i.e.,* causing serious physical harm to property owned by a governmental entity in violation of R.C. 2909.05. We reverse.

In February 1992, Deanna Hinton, age sixteen, was placed in the Gallia County Children's Home ("GCCH") pursuant to an order of the Gallia County Common Pleas Court. On February 29, Hinton walked down on GCCH's lawn, beyond the allowable perimeters. She was told to return by Phyllis Mays. When Hinton returned, she argued with and used profane language toward Mays. Mays gave her a detention. This upset Hinton and, as she walked out, still swearing at Mays, Hinton pulled the door behind her with such force that the glass in the door broke.

On March 2, 1992, Gallia County Children's Services ("GCCS") filed a complaint against Hinton, a juvenile, alleging that she appeared to be a delinquent child, pursuant to R.C. 2151.02, because she had knowingly caused physical harm to property owned by a governmental entity in violation of R.C. 2909.05. Such violation, if committed by an adult, would be a fourth degree felony.

The Juvenile Division of the Gallia County Common Pleas Court held a hearing on the matter on March 9, 1992. At the hearing, Mays testified that Hinton was "mad" and slammed the door as she left, causing the glass to break. Joel Atha testified that replacement cost for the door was $382.80.

Hinton took the stand and testified that she was upset because Mays gave her a detention. She said she left the building to talk with Liz Stewart, an employee who was just coming on duty at GCCH. She testified that as she pulled the door closed behind her, she did not know the glass would break and she did not intend to break the glass.

The trial court, pursuant to R.C. 2151.02, found Hinton a delinquent child by reason of having committed an act which, if committed by an adult, would constitute a fourth degree felony, that being causing serious physical harm to property owned by a governmental entity in violation of R.C. 2909.05. Hinton appeals and assigns one error.

ASSIGNMENT OF ERROR

"The trial court committed prejudicial error in finding Defendant–Appellant was a delinquent child by reason of having committed an act which if committed by an adult would constitute a felony to the fourth degree in violation of Ohio Revised Code Section 2909.05."

Hinton asserts that the basic issue in this case is whether there was proof beyond a reasonable doubt that Hinton intended to violate R.C. 2909.05. We begin by noting that Hinton asserts the correct standard of proof to which the state is held in a delinquency action. See Juv.R. 29(E)(4). Therefore, GCCS was required to present evidence so that the trial court could find, beyond a reasonable doubt, that Hinton was a delinquent child pursuant to R.C. 2151.02

and 2909.05. See, generally, *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

We now turn to whether the state presented sufficient evidence to support the trial court's finding that Hinton was a delinquent child beyond a reasonable doubt. We find that it did not.

Hinton argues that she did not have the culpable mental state to have caused serious physical harm to governmental property and, thus, should not have been adjudicated a delinquent child. We agree.

R.C. 2901.22 defines "knowingly" as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Hinton asserts that she did not think that the natural consequences of her pulling shut the door would be to break the glass in the door. Ordinarily, the natural consequences of slamming a door are only a loud noise and a demonstration of contempt for the person left behind the slammed door. Doors are often slammed in a fit of pique and the natural consequence is that the glass does not break.

What we have here is a case of a sixteen year old, who in the middle of a child-like temper tantrum, broke another's property—here, property belonging to GCCS. A sixteen year old is not often entirely aware of the consequences of her actions, or of her burgeoning strength. Nonetheless, an individual's age should not relieve her of the consequences of her actions. However, she should not be held to a higher culpable mental state than that of adults, since the essence of the charge here is that it would be a felony if committed by an adult. If an adult slammed a door and it broke, it is highly unlikely that person would be indicted for a felony.

Many adults have, at one time or another, slammed a door in anger or disgust, but in doing so they probably did not contemplate or anticipate that their action would break that door. Yet, such breakage can happen, as happened here to Hinton, but such an event would almost certainly be regarded as a civil matter.

In this case, the trial court used an improper standard in reaching its decision. In order to find the defendant guilty, the court had to find a culpable mental state. However, at the close of the case, the trial judge said:

"And at the time she closed the door, the glass broke. And there's no dispute about that. *Whatever her intentions were*, she caused it. I'm going to find her guilty." (Emphasis added.)

The evidence below was insufficient for the trial court to find that Hinton had the requisite culpable mental state for conviction. Instead, the court applied a strict liability standard. We agree that Hinton acted badly and should have been punished. However, in reviewing the transcript and the record here, we find that the state failed to prove beyond a reasonable doubt that Hinton acted with the required degree of mental culpability.

Hinton's assignment of error is well taken and is sustained. The judgment of the trial court is reversed and the appellant is ordered discharged.

*Judgment reversed.*

STEPHENSON, P.J., and HARSHA, J., concur.